# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELVIN BOWMAN, | : |
| Plaintiff, | : |
| v. | : Case. No. 2:19-cv-3092-JDW |
| MARK WAHL, *et al.*, | : |
| Defendant. | : |

## MEMORANDUM

Prison officials at the State Correctional Institution at Chester concluded that Melvin Bowman violated prison rules because he knew that another inmate had a cell phone but did not report it and because he was communicating with an inmate in the Restricted Housing Unit. They punished him. Mr. Bowman19 thinks the punishments were unfair, so he has filed this lawsuit. But the Court does not sit in judgment of the fairness of prison disciplinary decisions. It only determines if prison officials' actions violate the Constitution. In this case, they did not, so the Court will grant Defendants' summary judgment motion and deny Mr. Bowman's motion.

## I.  BACKGROUND

### A.  Mr. Bowman's Punishment

In September 2018, Mr. Bowman was an inmate at SCI Chester. He lived on the Honor Block, which gave him special privileges; he held a nonpaying position on the board of a prison organization; and he held paying positions in the electronics department and the activities department.

In the summer of 2018, prison officials searched the cell of an inmate, Arius Haynes. They discovered a cell phone charger but no cell phone. Officials sent Mr. Haynes to the Restricted Housing Unit. After Mr. Haynes went to RHU, Mr. Bowman asked Corrections Officer Nate Jones for access to Mr. Haynes's cell to retrieve Mr. Haynes's cell phone. Officer Jones reported this conversation, and officials conducted another search of Mr. Haynes's cell, during which they found the cell phone.

These events led Deputy Superintendent of Internal Security ("DSIS") Daryl Bradley and Captain Lorie Eason to investigate. During that investigation, they interrogated Mr. Bowman twice, and they considered Mr. Bowman to have been cooperative each time. During the first interview, Mr. Bowman admitted that he knew that Mr. Haynes had a cell phone. During the second interview, Mr. Bowman admitted that he was communicating with Mr. Haynes in the RHU by using CO Jones as an intermediary, in violation of prison rules.

As a result of their investigation, DSIS Bradley and Capt. Eason decided to punish Mr. Bowman for violating prison rules. They removed him from the Honor Block, his prison jobs, and the board of the inmate organization. But they refrained from issuing him a misconduct citation, which would have been a more severe penalty. Mr. Bowman filed unsuccessful grievances challenging his punishment.

**B.     Other Prisoners' Experiences**

As part of his claim, Mr. Bowman points to several other prisoners at SCI Chester who, in his view, received more favorable treatment.

- Sergio Hyland. Prison officials removed Mr. Hyland from the Honor Block based on an allegation that he was trying to smuggle a cell phone into the prison.

2

However, an investigation exonerated him, so prison officials returned him to the Honor Block.

- Richard Patrick and Aaron Kelly. Neither of these inmates lived on the Honor Block. Prison officials caught each of them with a cell phone. Each was issued a citation for misconduct, sent to the RHU, and lost his job.

- Pedro Carrasquillo and Orlando Gonzalez. Each of these inmates lived on the Honor Block. Each had money in his account to buy drugs. Prison officials removed each of them from the Honor Block, and each lost his job.

- Eugene Greene. Mr. Greene lived on the Honor Block. He received a birthday card from a DOC employee, which apparently constituted contraband. He was sent to the RHU and returned to the Honor Block after he served time in RHU.

### C. Procedural History

Mr. Bowman filed suit in July 2019. After an initial screening, the Court permitted Mr. Bowman to pursue a claim under the Equal Protection Clause on a class-of-one theory, but it dismissed Mr. Bowman's due process and Eighth Amendment claims with prejudice. Mr. Bowman then filed an amended complaint against DSIS Bradley and Capt. Eason, asserting retaliation in violation of the First Amendment (on the theory that he was punished for not cooperating with the investigation) and violation of the Equal Protection Clause. After taking some discovery, Mr. Bowman sought leave to file a second amended complaint in order to "properly articulate" the alleged due process violations. Defendants did not object. In his second amended complaint, however, Mr. Bowman asserts the same due process claims that the Court

3

dismissed with prejudice. He also continues to pursue his Equal Protection and First Amendment claims.

The parties have filed cross-motions for summary judgment. Mr. Bowman did not respond to the Defendants' motion. The Court will therefore treat Mr. Bowman's motion and supporting statement of facts as a response to Defendants' statement of facts, to the extent the two are in conflict. However, to the extent Defendants have put forward facts that Mr. Bowman's motion does not address, the Court treats those facts as undisputed.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute

4

over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

If a non-movant fails to file an opposition, a court must still determine that there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e)(3); *see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (interpreting a previous version of Rule 56). A genuine dispute of material facts exists when a jury's review of the evidence could feasibly lead to a "verdict for the non-moving party," or where the dispute of fact could affect the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (quotation omitted). Rather, "[w]hen confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

## III. DISCUSSION

### A. Due Process

The Court dismissed Mr. Bowman's due process claims with prejudice when it assessed his original Complaint. (ECF No. 8, ¶ 2.) He has not sought reconsideration and cannot pursue them. In any event, the claims fail as a matter of law for the same reason they did when the Court ruled on this issue before. Mr. Bowman does not have a constitutionally protected interest in prison jobs, positions, or housing in a particular housing unit. *See James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Meachum v. Fano,* 427 U.S. 215, 224 (1976).

### B. Equal Protection

In a "class of one" equal protection challenge, the plaintiff must prove that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). A plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). To be "similarly situated," groups need not be identical in makeup, they need only share commonalities that merit similar treatment; "[t]he 'similarly situated' analysis is not a 'precise formula,' but we have stated repeatedly that what is "clear [is] that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (quoting *McDonald v. Vill. of*

*Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004)). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action "will be upheld if it is 'rationally related to a legitimate state interest.'" *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

Mr. Bowman's claim fails at the first element; he has no evidence that either Defendant treated him differently than other, similarly-situated inmates. Prison officials rescinded Mr. Hyland's punishment after an investigation proved the allegations against him untrue. No investigation cleared Mr. Bowman, so Mr. Bowman was not situated similarly to Mr. Hyland. Mr. Patrick and Mr. Kelly received harsher punishments than Mr. Bowman, so Mr. Bowman cannot base his claim on their treatment. Mr. Carrasquillo, Mr. Gonzalez, and Mr. Greene were not similarly situated to Mr. Bowman because they violated different rules, so the penalties necessarily differed.

### C. First Amendment Retaliation

"A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). Once a prisoner has made a *prima facie* case, the burden shifts to a defendant to show by a preponderance of the evidence that he would have made the same decision for

7

reasons reasonably related to penological interests. *Id.* (quotation omitted). When determining the reasonableness of prison regulations, courts weigh: (1) a "valid, rational connection" between the prison regulation and a legitimate governmental interest claimed in support of it, (2) whether other ways to exercise the right are available to prisoners, (3) the impact of accommodating the claimed constitutional right on guards and other prisoners, and (4) the absence of reasonable alternatives, which is evidence of reasonableness. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Mr. Bowman has no evidence that he received any punishment for his failure to speak during an investigation. In fact, DSIS Bradley and Capt. Eason viewed him as cooperative and so they had no reason to punish him for silence. He therefore cannot demonstrate a *prima facie* case. Even if he could, DSIS Bradley and Capt. Eason had a legitimate penological basis for punishing him: his admission that (a) he knew Mr. Haynes had a cell phone but did not report the violation and (b) he was communicating with Mr. Haynes through CO Jones while Mr. Haynes was in RHU. Their decision to remove him from the Honor Block and his various positions as a result was reasonably related to this penological interest.

## IV. CONCLUSION

Mr. Bowman does not have evidence to support his claims. DSIS Bradley and Capt. Eason conducted an investigation, with which Mr. Bowman cooperated, they determined that Mr. Bowman broke prison rules, and they punished him. Nothing about that constitutes a constitutional violation. The Court will therefore grant summary judgment to DSIS Bradley and Capt. Eason. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

June 24, 2021